STATE ex rel. KCP & L GREATER MISSOURI OPERATIONS COMPANY, Relator,

v.

The Honorable Jacqueline COOK, Circuit Court Judge, 17th Judicial Circuit Court, Respondent.

No. WD 73462.

Missouri Court of Appeals, Western District.

Sept. 13, 2011.

Motion for Transfer to Supreme Court Denied Nov. 1, 2011.

Application for Transfer Denied Dec. 20, 2011.

**16**

J. Stan Sexton, Kansas City, MO, for appellant.

Kenneth B. McClain II, Independence, MO, for respondent.

Before JAMES EDWARD WELSH, P.J., JAMES M. SMART, JR., JOSEPH M. ELLIS, VICTOR C. HOWARD, ALOK AHUJA, MARK D. PFEIFFER, KAREN KING MITCHELL, and GARY D. WITT, JJ., and ANTHONY REX GABBERT, Sp.J.

ALOK AHUJA, Judge.

Relator KCP & L Greater Missouri Operations Company seeks a writ of prohibition directing Respondent, Judge Jacqueline Cook of the Seventeenth Judicial Circuit, to take no further action other than to grant its motion for summary judgment in the pending civil lawsuit, *Monroe Gunter v. KCP & L Greater Missouri Operations Co., et al.,* Case No. 10CA–CV01079. Gunter alleges in the underlying suit that his exposure to asbestos while working for KCP & L caused him to develop mesothelioma. KCP & L asserts that it is entitled to summary judgment because Gunter's claims fall within the exclusive-remedy provisions of the Workers' Compensation Law, §§ 287.120.1 and .2,[1] and must first be presented to the Labor and Industrial Relations Commission. We hold that Gunter's claims are not subject to the Act's exclusivity provisions because they do not arise out of an "accident" as that term is defined in the statute. The circuit court therefore did not err in denying KCP & L's summary judgment motion, and we accordingly quash the preliminary writ of prohibition we previously issued.

### Factual Background

Gunter worked for KCP & L for thirty-four years before he retired in 1988. He was diagnosed with mesothelioma in February 2010. In April 2010, Gunter filed a lawsuit against KCP & L, sixteen manufacturers of asbestos-containing products, and various "John Doe" companies that designed, manufactured, distributed, supplied, used, or handled asbestos or asbestos-containing products to which he was allegedly exposed. In his first amended

---

1. Unless otherwise indicated, statutory citations refer to the RSMo 2000 as updated through the 2010 Cumulative Supplement.

petition, Gunter alleged that he was exposed to asbestos during the course of his employment for KCP & L and that this asbestos exposure directly and proximately caused him to develop mesothelioma. He asserted claims against KCP & L on premises liability and negligence theories. In particular, Gunter alleged that, "[a]s an employer and user of asbestos products, [KCP & L] had a duty to maintain a safe working environment, a duty not to expose Plaintiff to asbestos and a duty to exercise reasonable care so as not to expose its workmen including Plaintiff to unreasonable risk of injury." In its answer, KCP & L asserted as an affirmative defense that Gunter's claims are barred because his exclusive remedy, if any, is under Missouri's Workers' Compensation Law.

Every defendant other than KCP & L was ultimately dismissed from the lawsuit by settlement or otherwise. KCP & L filed a motion for summary judgment based upon its affirmative defense that Gunter's claims against it are exclusively compensable in a workers' compensation proceeding before the Commission. In response, Gunter argued that, pursuant to the 2005 amendments to the Act, only claims arising out of an "accident" as defined in § 287.020.2 are subject to the Act's exclusivity provisions, and that his claims do not involve an accidental injury.[2]

■ The circuit court entered an order denying KCP & L's summary judgment motion. KCP & L responded by filing a Petition for Writ of Prohibition in this Court.[3] We issued a preliminary writ on January 28, 2011, and set the case for full briefing and argument.

## Analysis

Determining whether Gunter's claims are subject to the Act's exclusivity provisions requires us to interpret and apply the Workers' Compensation Law, Chapter 287, RSMo. The primary rule of statutory interpretation "is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *State ex rel. Unnerstall v. Berkemeyer*, 298 S.W.3d 513, 519 (Mo. banc 2009) (citations and internal quotation marks omitted). "The legislature is presumed to have intended what the statute says, and if the language used is clear, there is no room for construction beyond the plain meaning of the law." *State v. Sharp*, 341 S.W.3d 834, 839 (Mo. App. W.D.2011) (citing *State v. Thesing*, 332 S.W.3d 895, 897–98 (Mo.App. S.D. 2011)); *see also State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002) ("When the words are clear, there is nothing to construe beyond applying the plain meaning of the

---

**2.** Gunter also argued that his claims are not subject to the Act's exclusivity provisions because his exposure to asbestos at KCP & L was not the "prevailing factor" in causing his mesothelioma, and his occupational disease-related claims would therefore not be compensable under the Act. *See* § 287.067.2. Because we conclude that Gunter's claims do not arise from an "accident," and that § 287.120's exclusivity provisions are inapplicable for that reason alone, we need not address this additional, alternative argument.

**3.** A writ of prohibition is available: "(1) to prevent a usurpation of judicial power when

the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Houska v. Dickhaner*, 323 S.W.3d 29, 32 (Mo. banc 2010). In particular, "[p]rohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation." *Id.; see also State ex rel. City of Blue Springs v. Nixon*, 250 S.W.3d 365, 369 (Mo. banc 2008) (citation omitted).

law."). We will look beyond the plain meaning of the words of a statute "only when the language is ambiguous or would lead to an absurd or illogical result." *Akins v. Dir. of Revenue,* 303 S.W.3d 563, 565 (Mo. banc 2010).

## I.

The Workers' Compensation Law distinguishes between two general categories of compensable injuries: (1) injuries by accident; and (2) injuries by occupational disease. The Act specifies that an "accident" "shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." § 287.020.2. "An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." § 287.020.3(1).

On the other hand, "unless a different meaning is clearly indicated by the context," an "occupational disease" is defined as "an identifiable disease arising with or without human fault out of and in the course of the employment." § 287.067.1. "An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability." § 287.067.2.

■ The only statutory provision which arguably bars Gunter from proceeding against KCP & L in the circuit court, and therefore the sole statutory basis for KCP & L's request for an extraordinary writ of prohibition, is § 287.120. The statute provides in relevant part:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter *for personal injury or death of the employee by accident* arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, *on account of such accidental injury or death,* except such rights and remedies as are not provided for by this chapter.

(Emphasis added.)

Although the Act draws a clear distinction between injuries by accident and injuries by occupational disease, the plain language of §§ 287.120.1 and .2 limits those sections to injuries or death caused "by accident." KCP & L acknowledged at oral argument, and in the trial court, that Gunter's claims do not arise out of an "accident" as that term is defined in § 287.020.2, although it argues that § 287.120's exclusivity provisions should not be strictly limited to "accidents" as defined in § 287.020.2. To the contrary, we conclude that because § 287.120 only denies Gunter a common-law remedy for "personal injury or death of the employee *by accident,*" KCP & L's concession that this case does *not* involve an "accident," as that term is statutorily defined, defeats its reliance on § 287.120.

The conclusion that the Act's exclusivity provisions are limited to injuries or death caused by an "accident" as defined in

§ 287.020.2 is confirmed by the Missouri Supreme Court's decision in *Missouri Alliance for Retired Americans v. Department of Labor & Industrial Relations*, 277 S.W.3d 670 (Mo. banc 2009) ("*MARA*"). Although *MARA* found the majority of the claims raised in that case to be nonjusticiable, the Court did enter a declaratory judgment as to the interplay between § 287.120's exclusivity provisions, and the definitions of "accident" and "injury" in §§ 287.020.2 and .3. Based on "a simple reading of the statute itself," 277 S.W.3d at 679, the Court explained:

The definitions for "accident" and "injury" are utilized in the exclusivity clause and amendment of those definitions impacts the scope of the workers' compensation laws. By limiting those definitions, the scope of the act is limited. Any removal of certain injuries and accidents from the scope of the act also places the workers who have suffered those injuries outside the workers' compensation system, and they are no longer governed by the act.

. . . *In other words, [the Workers' Compensation Law] is the exclusive remedy only for those "injuries" that come within the definition of the term "accident" under the act*. . . .

. . . *[I]f an "injury" comes within the definition of the term "accident" as defined in section 287.020.2, then it is included within the exclusivity provisions of the act, and recovery can be had, if at all, only under the terms set out in the act. If the "injury" is one that is not included within the term "accident" as defined in the act, however, then under section 287.120.1* . . . *the injury* . . . *is not subject to the exclusivity provisions of the act* . . . .

Workers excluded from the act by the narrower definition of "accidental injury" have a right to bring suit under the common law, just as they could and did prior to the initial adoption of the act. . . .

. . . *It therefore is adjudged, decreed and declared that workers excluded from the act by the narrower definitions of "accident" and "injury" have a right to bring suit under the common law, just as they could and did prior to the initial adoption of the act, because they no longer fall within the exclusivity provision of the act as set out in section 287.120.*

*Id.* at 679–80 (emphasis added).[4] The holding of *MARA* is consistent with our decisions specifying the showing an employer must make to prevail on a motion for summary judgment asserting the affirmative defense of workers' compensation exclusivity: the first element that must be established is that "[the employee]'s claim is *based on an accident* arising out of and in the course of [the employee]'s employment[.]" *Treaster v. Betts*, 324 S.W.3d 487, 490 (Mo.App. W.D.2010) (emphasis added); *see also Fortenberry v. Buck*, 307 S.W.3d 676, 679 (Mo.App. W.D.2010).

We are, of course, bound by the Missouri Supreme Court's holding in *MARA*. Mo. Const. art. V, § 2. Under *MARA*, the Workers' Compensation Law "is the exclusive remedy only for those 'injuries' that come within the definition of the term 'accident' under the act." 277 S.W.3d at 679. Here—as *KCP & L concedes*—Gunter's occupational disease-related claims do not arise out of an "accident" as defined in § 287.020.2. Under *MARA*, therefore, Gunter "ha[s] a right to bring suit under

---

4. While the quoted language comes from a three-judge plurality opinion, Judge Wolff, joined by two other judges, concurred in the issuance of a declaratory judgment. 277 S.W.3d at 681.

the common law, just as [he] could and did prior to the initial adoption of the act, because [he] no longer fall[s] within the exclusivity provision of the act as set out in section 287.120." *Id.* at 680.[5]

 The current version of the Act specifies that "reviewing courts shall construe the provisions of this chapter strictly." § 287.800.1. This legislative mandate provides further reason to interpret § 287.120 as it is plainly written. As we recently explained,

> Strict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms. The operation of the statute must be confined to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter. A strict construction of a statute presumes nothing that is not expressed.

*Robinson v. Hooker,* 323 S.W.3d 418, 423 (Mo.App. W.D.2010) (citations and internal quotation marks omitted). This rule of strict construction applies both to § 287.120, and to the definitions of words used in that section. *Id.* at 424. Consistent with *MARA, Robinson* recognizes that, "[e]ven though the language of the

exclusivity provision was not amended in 2005, the scope of employer immunity was narrowed by the new lens of strict construction." *Id.* Under the canon of strict construction, we cannot add injuries by occupational disease to §§ 287.120.1 and .2, when the provisions unambiguously refer only to injuries caused "by accident."[6]

 *Robinson* notes an additional reason to abstain from judicial expansion of § 287.120's exclusivity provisions: "the long-standing principle that close questions regarding the existence of common law rights should weigh in favor of retaining the common law right of action." *Id.* at 425 n. 4. As we stated in another context:

> Where the legislature intends to preempt a common law claim, it must do so clearly. Unless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid. A statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelops the remedies provided by common law. We strictly construe a

---

5. The Supreme Court in *MARA* was "not asked to decide what injuries fall within the definition of 'accident' in section 287.020.2 and, therefore, no opinion [was] expressed." *Id.* While the Court was not required to construe § 287.020.2's definition of "accident," its opinion makes crystal clear that unless an injury arises from an "accident" as defined in the statute, § 287.120's exclusivity provisions are not implicated. Because KCP & L has admitted that Gunter's claims do not arise from an "accident" as statutorily defined, his claims do not trigger § 287.120. As in *MARA,* given KCP & L's concession we need not "decide what injuries fall within the definition of 'accident' in section 287.020.2" in order to resolve this writ proceeding.

6. Section 287.800.1 states, categorically, that the principle of strict construction "shall" ap-

ply in construing "the provisions of this chapter," not merely when interpreting a subset of Chapter 287's provisions, such as those establishing compensability standards. Consistent with § 287.800.1's unqualified reach, we applied the strict construction principle to § 287.120's exclusivity provisions, and to § 287.030.1's definition of an "employer," in *Robinson. See* 323 S.W.2d at 424–25. The Southern and Eastern Districts have similarly applied the canon of strict construction to § 287.495's provisions concerning judicial review of Commission decisions. *See Bolen v. Orchard Farm R–V School Dist.,* 291 S.W.3d 747 (Mo.App. E.D.2009); *Smalley v. Landmark Erectors,* 291 S.W.3d 737 (Mo.App. E.D. 2009); *Norman v. Phelps Cty. Reg'l Med. Ctr.,* 256 S.W.3d 202 (Mo.App. S.D.2008).

statute when existing common law rights are affected, and if a close question exists, we weigh our decision in favor of retaining the common law.

*State ex rel. Brown v. III Invs., Inc.*, 80 S.W.3d 855, 859–60 (Mo.App. W.D.2002) (citations and internal quotation marks omitted). Thus, even if the issue here were close, we should resolve any doubt in favor of preserving Gunter's common-law remedies.

Section 287.120.1 explicitly states that the Workers' Compensation Law provides the exclusive remedy only for claims "for personal injury or death of the employee *by accident.*" "Accident" is defined in a manner that excludes Gunter's claims, as KCP & L concedes. Under the rule of strict construction, § 287.120.1 "must be confined to matters affirmatively pointed out by its terms"; no matter how sensible we may believe the outcome, we are not authorized to give § 287.120.1 any "broader application than is warranted by its plain and unambiguous terms." *Robinson*, 323 S.W.3d at 423 (citation and internal quotation marks omitted).

■ The plain language of § 287.120 leads inexorably to only one outcome: Gunter is entitled to proceed in the circuit court on his claims for occupational disease against KCP & L, and the circuit court correctly denied KCP & L's motion for summary judgment, which sought to prevent him from doing so.[7]

## II.

In arguing for a contrary result, KCP & L relies heavily on the construction of the Workers' Compensation Law prior to the comprehensive 2005 amendments to the statute. In particular, KCP & L cites to *Staples v. A.P. Green Fire Brick Co.*, 307 S.W.2d 457 (Mo. banc 1957), in which the Missouri Supreme Court interpreted the statutory definition of "accident" in the original Workers' Compensation Law to

---

7. KCP & L also argues that, under the doctrine of "primary jurisdiction," we should permit the Labor & Industrial Relations Commission to decide in the first instance whether Gunter's claims arise from an "accident." Gunter argues in response that the primary jurisdiction doctrine was abrogated by *McCracken v. Wal–Mart Stores East, LP*, 298 S.W.3d 473 (Mo. banc 2009). Even if the primary jurisdiction doctrine remains viable, however, it would not require dismissal, given KCP & L's concession that Gunter's claims do not arise from an accident. The doctrine of primary jurisdiction

> must be considered in light of the fact that jurisdiction remains in the trial court unless it appears by a preponderance of the evidence that the matter falls within the exclusive jurisdiction of workers' compensation law. That standard is not met merely by allegations of one party, as are made here by defendant, that the commission has jurisdiction. Rather, the court must examine the facts presented and find by a preponderance of the evidence that the issue contested is one within the commission's expertise.

*Harris v. Westin Mgmt. Co. E.*, 230 S.W.3d 1, 3 (Mo. banc 2007) (citation omitted).

*Harris* recognized that, as a general proposition, the question whether an injury occurred in the course and scope of employment was one for the Commission's initial determination. *Id.* (citing *Killian v. J. & J. Installers, Inc.*, 802 S.W.2d 158, 160 (Mo. banc 1991)). Despite this general rule, the Court in *Harris* held that primary jurisdiction was inapplicable where "the record [was] uncontested," and "[n]o evidence created a factual issue" as to whether the plaintiff in that case was injured in the course and scope of his employment. *Id.* In those circumstances, "there [was] no question for the commission to resolve," and the Court itself decided the course and scope of employment issue. *Id.* at 3–4. This case presents a similar circumstance.

We also note that, because Gunter's suit is not a "claim[ ] filed under this chapter," § 287.801 does not preclude the circuit court from reviewing it.

include occupational disease claims, which had been added to the statute (on an elective basis) by a 1931 amendment. We acknowledge that the Act was consistently interpreted to bring occupational disease claims within § 287.120's exclusivity provisions prior to the 2005 amendments. Those amendments, however, changed the Act in at least four material respects, which prevent us from relying on the historical interpretation of predecessor statutes.[8]

1. The 2005 amendments repealed the provision of the earlier statute which provided that "[a]ll of the provisions of this chapter shall be liberally construed with a view to the public welfare[.]" § 287.800, RSMo 2000. Applied to § 287.120, the pre–2005 canon of liberal construction required that, "where a question of jurisdiction is in doubt, it should be held to be in favor of the Labor and Industrial Commission." *Vatterott v. Hammerts Iron Works, Inc.*, 968 S.W.2d 120, 121 (Mo. banc 1998) (citation and internal quotations marks omitted); *see also, e.g., Sexton v. Jenkins & Assocs., Inc.*, 41 S.W.3d 1, 7 (Mo.App. W.D.2000); *Deckard v. O'Reilly Auto., Inc.*, 31 S.W.3d 6, 13 (Mo.App. W.D.2000). Thus, the pre–2005 canon of liberal construction reversed the general rule that doubts should be resolved *against* statutory preemption of common-law remedies. The Supreme Court observed that, while "[t]his law of construction may limit a particular individual's recovery," it was mandated by § 287.800, RSMo 2000, because "it ensures that more individuals enjoy the protection intended by the Workers' Com-

pensation Law." *Vatterott*, 968 S.W.2d at 121.

This rule of liberal construction was in effect at the time of the *Staples* decision. *See* § 287.800, RSMo 1949. Section 287.800, RSMo 1949 was not explicitly referenced in *Staples*. Nevertheless, it is clear that *Staples* applied the principle of liberal construction mandated by § 287.800, RSMo 1949: *Staples* concluded that the definition of "accident" must be "liberalized" to accommodate occupational disease claims, and endorsed prior cases in which the "the strict definition[s]" of § 287.020 "ha[ve] necessarily been enlarged, expressly or inferentially," "in harmony with the purpose of the amendment" adding occupational disease claims to the Act's coverage. 307 S.W.2d at 462.

In the place of the pre–2005 rule of liberal construction, which required that doubts be resolved in favor of exclusive Commission authority to resolve particular claims, the current statute instructs reviewing courts to "strictly" construe its provisions. § 287.800.1. Although it may have been entirely appropriate, prior to the 2005 amendments, for *Staples* to "liberalize" the "strict definitions" of an "accident" and an "injury" in § 287.020, we have now been instructed to abstain from any "liberal" construction of the statute, and instead to hew to a "strict[ ]" construction of the words used by the legislature. While *Staples'* approach may well have been sensible, and consistent with then-prevailing law, we can no longer follow

---

8. Because of these statutory revisions, KCP & L misses the mark when it argues that, under § 1.120, interpretations of predecessor versions of § 287.120 remain controlling.

We note that, in *Idekr v. PPG Industries, Inc.*, No. 10–0449–CV–W–ODS, 2011 WL 144922 (W.D.Mo. Jan.18, 2011), the district court held, consistent with KCP & L's argu-

ments, that a worker's exclusive remedy for an occupational disease claim remained through the workers' compensation system, despite the 2005 amendments to the statute. For the reasons explained at length in this opinion, we conclude that *Idekr* was incorrectly decided, and therefore decline to follow it.

*Staples* given the legislature's significant amendments to § 287.800.

2. The 2005 amendments made significant revisions to the definition of an "accident." Prior to 2005, the definition of an accident provided in relevant part that

> The word **"accident"** as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.

§ 287.020.2, RSMo 2000. The 2005 amendments replaced this definition with the following:

> The word **"accident"** as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

§ 287.020.2.

At least two things are noteworthy concerning the amendments to the "accident" definition. First, the pre–2005 definition included a "series of events," which provided some textual basis for construing the term to include the repeated exposure to conditions which cause an occupational disease. To the contrary, the post–2005 definition is plainly limited to a single, discrete, identifiable event or strain occurring during a single work shift.

Second, and more significantly, the 2005 amendments eliminated the qualifier that the statutory definition of "accident" applied "unless a different meaning is clearly indicated by the context." In contrast, the 2005 legislature *retained* similar qualifying language in the definitions of an "injury" and an "occupational disease." [9] The pre–2005 language provided authority for courts to adopt a broader or different definition of "accident," in particular contexts within the statute, where necessary to give full effect to other provisions of the Act. *Staples* specifically referred to this qualifier as a "highly material, if not controlling" consideration in its decision, 307 S.W.2d at 462, and explained:

> We believe, and hold, that the word "accident," as it appears in the context of [§ 287.020.4, RSMo 1949], clearly indicates a broader meaning than that specifically defined in paragraph 2. As well stated by the Court of Appeals in this case: "... The context of Section 287.020(4) requires such a construction [of the word 'accident'] in order that the terms of the law may be applied in all its aspects to industrial disease."

*Id.* (citation omitted). The Court emphasized that "[t]he qualification contained in the paragraph defining 'accident' cannot properly be overlooked; it constituted an express recognition of the fact that there might be a necessity for a broader definition. That necessity arose when the amendment [authorizing workers' compensation coverage for occupational disease claims] was enacted." *Id.* at 463.

The statutory language on which *Staples* relied as "highly material, if not controlling" has been eliminated from the current

9. *See* § 287.020.3(5) ("The[ ] terms ['injury' or 'personal injuries'] shall in no case *except as specifically provided in this chapter* be construed to include occupational disease in any form." (emphasis added)); § 287.067.1 ("the term **'occupational disease'** is hereby defined to mean, *unless a different meaning is clearly indicated by the context,* an identifiable disease arising with or without human fault out of and in the course of employment" (italics added)).

definition of an "accident." The current definition no longer contemplates the "necessity for a broader definition" of an "accident" depending on the context in which the word appears. Instead of the malleable definition found in prior law, the legislature has now instructed that the single, narrow definition of an "accident" found in § 287.020.2 is to be employed whenever the word is used in Chapter 287. The 2005 amendments to the "accident" definition provide a further reason why we can no longer follow *Staples*.

3. The 2005 amendments significantly modified the standards for compensability of occupational disease claims. Prior to the 2005 amendments, § 287.067.2, RSMo 2000 provided:

> An occupational disease is compensable if it is clearly work related *and meets the requirements of an injury which is compensable as provided in subsections 2 and 3 of section 287.020.* An occupational disease is not compensable merely because work was a triggering or precipitating factor.

(Emphasis added.) The 2005 amendments rewrote this provision, so that it now reads:

> An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability. The "prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability. Ordinary, gradual deterioration,

or progressive degeneration of the body caused by aging or by the normal activities of day-to-day living shall not be compensable.
§ 287.067.2.[10]

Combined with the revisions to the definition of "accident," the obvious intent of the 2005 amendments to § 287.067.2 was to divorce the compensability of occupational disease claims from §§ 287.020.2 and .3—the statutory provisions which define "accident" and "injury."[11] This is confirmed not only by the elimination of the specific cross-reference to §§ 287.020.2 and .3 which formerly appeared in § 287.067.2, RSMo 2000, but also by the addition of language to § 287.067.2 excluding claims for "[o]rdinary, gradual deterioration, or progressive degeneration of the body caused by aging"—language that formerly appeared in the "injury" definition in § 287.020.3(1), RSMo 2000. The separation of the standards for compensability of injuries by accident and injuries by occupational disease is further confirmed by the 2005 amendments to § 287.020.3(2)(a). While that provision formerly provided that an injury would be deemed to have arisen out of and in the course of employment if it was shown that *"the employment* was a substantial factor in causing the injury," the post–2005 provision requires proof that *"the accident* is the prevailing factor in causing the injury."

Thus, while the pre–2005 statutory provision providing for the compensability of occupational disease claims explicitly cross-referenced the statutory provision

---

10. Given this rewriting, *Idekr* is mistaken when it asserts that current § 287.067.2 is "identical to the provision[ ] in place before the 2005 Amendments." 2011 WL 144922, at *2.

11. Notably, the statutory provision authorizing workers' compensation recovery for occupational disease claims at issue in *Staples*

likewise tied occupational disease claims to the concept of an "accident." *See* § 287.020.4, RSMo 1949; *Staples*, 307 S.W.2d at 461 (noting that the Court was required to "construe the term ['accident'] as used (specifically) in paragraph 4 of § 287.020").

defining an "accident," that cross-reference has been eliminated, and § 287.067.2 now contains a "stand-alone" compensability standard for occupational disease claims, independent of §§ 287.020.2 and .3. Once again, this diminishes the justification for making occupational disease claims fit within the definitions of "accident" and "injury" contained in other provisions of the Act.

Notably, KCP & L itself recognizes that "some of these revisions deliberately reinforce the bifurcation of the post–2005 law between 'injury by accident' and 'injury by occupational disease,' terms that did not exist in the statutes until the 2005 revisions. *See* R.S. Mo. § 287.020.3 ('An injury by accident is compensable . . .') *and* § 287.067.2 ('An injury by occupational disease is compensable . . .')." Br. at 27.[12] While KCP & L is correct that the 2005 amendments "bifurcated" the concepts of an "injury by accident" and an "injury by occupational disease," § 287.120 refers to only one of those two distinct types of injury: "injury by accident." Particularly under a rule of strict construction, we are not at liberty to import the *other*, omitted category of injury into § 287.120, simply because we conclude that doing so would be a salutary revision of the statute.

Following the 2005 amendments, the Workers' Compensation Law establishes an independent, detailed scheme for the compensation of occupational disease claims. By contrast, when *Staples* was decided, the statute contained only a single provision specifying that employers could elect workers' compensation coverage for occupational disease claims, with *no* specification of the compensability standards for such claims, or the procedures by which such claims should be resolved. *See* § 287.020.4, RSMo 1949. In these circumstances, *Staples* was required to adapt other provisions of the Act to accommodate occupational disease claims, in order to give *any* meaning to the statutory authorization to pursue such claims through the workers' compensation system. *See* 307 S.W.2d at 462 ("It is almost unthinkable that the legislature would adopt the amendment in question without contemplating and intending that its previously enacted definitions be broadened to fit the necessities of occupational disease claims."). This flexible reading was, of course, also consistent with the liberal construction afforded the pre–2005 Act. Here, however, we construe a statute which forbids liberal construction, and also contains detailed and explicit provisions specifying when and how occupational disease claims are compensable.[13]

4. Finally, the 2005 amendments explicitly abrogated prior case law interpreting the terms "accident" and "occupational disease." A new statutory provision, § 287.020.10, states:

**12.** Referring to the amendments to § 287.067.2, KCP & L similarly notes that in 2005 "the Legislature affirmatively deleted the reference to 'accident' in the definition of 'occupational disease,'" and that, "[g]iven this amendment, an 'occupational disease' cannot be required to be an 'accident' under § 287.020.2 or an injury under § 287.020.3." Reply Br. at 12 & n. 2. KCP & L ignores, however, that even though occupational disease claims are now compensable without reference to the concept of an "accident," such claims must still arise out of an "acci-

dent" to be subject to the exclusivity provisions of § 287.120.

**13.** Given the creation in 2005 of a stand-alone compensability standard for occupational disease claims, it is no longer accurate to say that "[t]here is no indication in the Act that the legislature did not intend for all occupational disease claims to be subject to the same conditions and limitations as other claims." *Staples*, 307 S.W.2d at 463.

In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of **"accident"**, **"occupational disease"**, **"arising out of"**, and **"in the course of employment"** to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo.App. W.D.2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.

KCP & L correctly observes that none of the cases listed in § 287.020.10 involved an occupational disease claim. Section 287.020.10 is not limited to the abrogation of the specifically identified cases, however; instead, the statute broadly "reject[s] and abrogate[s] earlier case law interpretations" of the term "occupational disease," as well as caselaw interpreting the term "accident." Notwithstanding KCP & L's desire to do otherwise, we are compelled to apply the clear and unequivocal legislative directive contained in § 287.020.10, and disregard pre–2005 caselaw interpreting the listed terms, particularly where the relevant statutory provisions were materially altered by the 2005 amendments.

\* \* \* \* \* \*

Because the current Workers' Compensation Law contains multiple provisions that are materially different than the corresponding provisions of predecessor statutes, we cannot rely on the 1957 decision in *Staples*, or other decisions interpreting earlier laws, to disregard the plain and unambiguous language of the current Act. Simply put, *Staples* and the other pre–2005 decisions on which KCP & L relies interpreted fundamentally different statutes than the one we construe today. Under the current statute, there is no justification for this Court to "liberalize" or expand the definition of an "accident," as that term is used in the Act's exclusivity provisions, beyond the unambiguous definition provided by the legislature itself in § 287.020.2.

KCP & L complains that the result compelled by the plain language of the current Workers' Compensation Law is contrary to the long-standing interpretation of the Act as "wholly substitutional in character." *McKay v. Delico Meat Prods. Co.*, 351 Mo. 876, 174 S.W.2d 149, 155 (1943). According to KCP & L, we should continue to interpret the Act based on the *quid pro quo* "bargain" between employers and employees which underlay predecessor statutes.[14] This reasoning is flawed from multiple perspectives, however. First, in addition to the provisions discussed above, the 2005 amendments made multiple, fundamental changes to the Workers' Compensation Law as it had existed previously.[15] Given the significant

14. Under that "bargain," "the employer forfeits his common law defenses to suits against him for his employee's injuries and assumes automatic liability; the employee forfeits his right to a potentially lucrative common law judgment in return for assured compensation." *Zueck v. Oppenheimer Gateway Props., Inc.*, 809 S.W.2d 384, 388 (Mo. banc 1991); *see also Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 162 (Mo. banc 1991) (Blackmar, C.J., concurring) ("In return for providing compensation which is both assured and in-

sured, the employer is relieved of the burden of civil actions for damages.").

15. *See, e.g., MARA*, 277 S.W.3d at 684–86 (Teitelman, J., dissenting) (describing various significant changes to the Act adopted in 2005, and concluding that, "[w]hen the cumulative impact of the 2005 amendments is considered, it is apparent that the result is a fundamental alteration of the equities of the workers' compensation bargain"); Note, *Resurrection of a Dead Remedy: Bringing Common Law Negligence Back into Employment*

differences between the current Act and predecessor statutes, we cannot uncritically rely on a general understanding of "the bargain" underlying prior laws to override the unambiguous language of the current statute. Even if we were to conclude that the 2005 legislature intended to retain the essence of the pre–2005 "bargain," we could not rely on this understanding to override the result dictated by the statute's unambiguous language. The first rule of statutory construction is to look to the statute's text; if the text yields a definitive answer to the question at hand, no further inquiry is justified or appropriate, except in limited circumstances which are inapplicable here. *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010). We do not have license to ignore the plain language of the Workers' Compensation Law in deference to a legislative intent which is wholly unmoored from the words of the statute itself.

The Missouri Supreme Court faced a similar situation in *State v. Rowe*, 63 S.W.3d 647 (Mo. banc 2002), in which a criminal defendant (Rowe) was convicted of driving with a canceled, suspended or revoked driver's license under § 302.321, RSMo 2000. Rowe's Iowa driver's license had been suspended and revoked by that State. Section 302.321, RSMo 2000, however, only criminalized the operation of a motor vehicle "when [the driver's] license or driving privilege has been canceled, suspended or revoked *under the laws of this state* . . . ." (Emphasis added; quoted at 63 S.W.3d at 648–49).

Although the Missouri Supreme Court presumed that the legislature's *intent* was to punish drivers whose licenses had been revoked by other States as severely as drivers revoked in Missouri, it held that it could not judicially impose this result, contrary to the unambiguous language of § 302.321, RSMo 2000:

> Despite the phrase "under the laws of this state," it seems unlikely that the Missouri legislature intended to let out-of-state drivers with multiple offenses suffer only the consequences of a misdemeanor for driving after revocation while subjecting Missouri drivers to a felony for the same act. Legislative intent can only be derived from the words of the statute itself. [¶] Courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning. The legislature may wish to change the statute to cover out-of-state multiple-offense drivers such as Rowe. But this Court, under the guise of discerning legislative intent, cannot rewrite the statute.

*Id.* at 649–50 (citations omitted). Whatever our belief as to the 2005 legislature's "true" intent, this Court "cannot rewrite the statute" to effectuate that intent, where it is contrary to the plain and unambiguous wording of the statute the legislature actually enacted.

### III.

As KCP & L correctly notes, numerous provisions of the Workers' Compensation Law provide for the compensability of claims for occupational disease, including claims for occupational disease based on repeated exposure to particular workplace conditions. Thus, § 287.110.2 declares that

> [t]his chapter shall apply to all injuries received and occupational diseases contracted in this state, regardless of where the contract of employment was made, and also to all injuries received and oc-

*Law,* 75 Mo. L.Rev. 1093, 1113 (2010) ("The 2005 amendments substantially changed the Workers' Compensation Act and were intended to narrow the categories of work-related injuries awarded compensation.").

cupational diseases contracted outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide, and also to all injuries received and occupational diseases contracted outside of this state where the employee's employment was principally localized in this state within thirteen calendar weeks of the injury or diagnosis of the occupational disease.[16]

■■ KCP & L then argues that, because repeat-exposure occupational disease claims are covered by and compensable under the Act, the Act's exclusivity provisions must necessarily apply to such claims. The Act does not require, however, that we treat as identical two separate questions: (1) whether repeat-exposure occupational disease claims are *compensable* under the Act; and (2) whether the workers' compensation system provides a claimant's *sole remedy* for such claims, and excludes common-law remedies. The existence of a workers' compensation remedy does not by itself necessarily establish that the statutory remedy is exclusive. Instead, the exclusivity of any remedy provided by the Act depends on the scope of the Act's exclusive-remedy provisions, found in §§ 287.120.1 and .2.

Employer liability for occupational disease claims does not depend on those claims falling within § 287.120. Section 287.120.1 specifies employer liability for "personal injury or death of the employee by accident," and provides that the admin-istrative workers' compensation remedy is exclusive of other remedies with respect to such claims. Section 287.120.1 is not the only provision that imposes liability on employers for work-related injury claims, however. With respect to occupational disease claims, § 287.063 provides:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 8 of section 287.067.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease prior to evidence of disability, regardless of the length of time of such last exposure, subject to the notice provision of section 287.420.

Similarly, § 287.067.2 provides for the compensability of occupational disease claims generally:

An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability. The "prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both

---

16. *See also, e.g.,* § 287.020.4 (providing that time limit for compensable death following an accident inapplicable to occupational disease claims); § 287.063 (prescribing statute of limitations for occupational disease claims, establishing presumption of exposure for such claims, and specifying that employer with whom the claimant was last exposed to injury-causing hazard is liable for the claim); § 287.067 (defining occupational disease, providing standards for compensability of in-jury by occupational disease, and recognizing injuries caused by repetitive motion, hearing loss, radiation exposure, and other causes as compensable occupational diseases); § 287.070 (recognizing occupational diseases related to cleanup of illegal drug laboratories); § 287.197 (providing for compensability for hearing loss due to industrial noise); § 287.420 (requiring employee to give employer written notice of occupational disease within thirty days after diagnosis).

the resulting medical condition and disability. Ordinary, gradual deterioration, or progressive degeneration of the body caused by aging or by the normal activities of day-to-day living shall not be compensable.

Notably—and unlike the prior statute—these provisions make occupational disease claims compensable, and make employers liable for such claims, without reference to the definition of "accident" in § 287.020.2. Thus, such claims are made compensable under the Act, and employers are rendered liable for such claims, independently of § 287.120, including its exclusivity provisions.[17]

Recognizing that repeat-exposure occupational disease claimants may have an available, but not exclusive, workers' compensation remedy would admittedly represent a substantial departure from prior law. But it is not an "absurd or illogical result" that would justify this Court in ignoring the plain language of the Act's various provisions. *Akins*, 303 S.W.3d at 565. In other States, workers have been recognized to have parallel remedies through the workers' compensation system and court actions in a variety of circumstances, including in connection with claims for "[i]ntentional injury by the employer, non-physical injury torts, failure to provide safety devices, [and] employment of minors...." 6 Lex K. Larson, LARSON'S WORKERS' COMPENSATION § 102.02[1] (rev. ed.2011) (footnotes omitted); *see also Torres v. Cintas Corp.*, 707 F.Supp.2d 1284, 1285 (N.D.Okla.2010) (collecting cases involving intentional torts). Indeed, Missouri's Workers' Compensation Law itself provides that an injured worker has the

option of pursuing either an administrative or judicial remedy in at least one situation: where the worker's employer fails to maintain statutorily required insurance. *See* § 287.280.1; *Lewis ex rel. Brown v. Gilmore*, —— S.W.3d ——, 2011 WL 1363977, at *2–*3 (Mo.App. W.D.2011); *Brookman v. Henry Transp.*, 924 S.W.2d 286, 289 (Mo.App. E.D.1996); *Bailey v. McClelland*, 848 S.W.2d 46, 47–48 (Mo.App. S.D. 1993). While perhaps unusual, it would therefore not be unprecedented, absurd, or irrational for the legislature to have provided repeat-exposure occupational disease claimants with a non-exclusive workers' compensation remedy.

Our holding—that § 287.120's exclusivity provisions do not apply to occupational disease claims—is thus fully consistent with the other provisions of the statute which provide for the compensability of such claims through the workers' compensation system. This case is therefore wholly unlike *Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101 (Mo.App. W.D.2008) (en banc), on which KCP & L heavily relies. In *Anderson*, an erroneous, isolated cross-reference in a single subsection of the Workers' Compensation Law, enacted as part of the original 2005 amendments, would have had the effect of nullifying the entire Act if the cross-reference were read literally. As the Court explained, a literal reading of the erroneous cross-reference would have produced the nonsensical result "that Missouri's Workers' Compensation Law is applicable to all cases falling within its provisions, except those cases falling within its provisions," *id.* at 107; stated another way, the mistaken clause would have "exclude[d] all cases arising under the Work-

---

17. Certain language in the *MARA* opinions could be read to suggest that, if a claim is not subject to § 287.120's exclusive-remedy provisions, that claim falls wholly outside the Act's coverage. As explained in § I above,

however, the *holding* of *MARA* concerned the interpretation of § 287.120's exclusivity provisions, not the coverage afforded by other provisions of the statute.

ers' Compensation Act from the Workers' Compensation Act...." *Id.* Unlike in *Anderson,* however, where a literal reading of a particular statutory provision "would render the entirety of the Act meaningless and superfluous," *id.* at 109, our reading of § 287.120's plain and unambiguous language leaves the other provisions of the statute fully operative.

Ultimately, however, the issue here is not whether repeat-exposure occupational disease claims are compensable through the workers' compensation system. Gunter is not seeking to pursue a workers' compensation remedy for his occupational disease-related claims. Instead, he is seeking to pursue a judicial remedy. We need only decide whether his common-law claims are precluded by § 287.120, which they plainly are not.

### Conclusion

KCP & L has conceded that Gunter's claims do not arise from an "accident," yet the exclusive-remedy provisions on which it relies to deny him his common-law rights are plainly and unambiguously limited to injury or death "by accident." The circuit court did not err in denying KCP & L's motion for summary judgment. Because KCP & L has failed to establish a right to a writ of prohibition, the preliminary writ we previously issued is quashed.

Judges ELLIS, HOWARD, PFEIFFER, MITCHELL, WITT and GABBERT concur.

Judge WELSH dissents in separate opinion, in which Judge SMART joins.

Judge SMART dissents in separate opinion, in which Judge WELSH joins.

JAMES EDWARD WELSH, Judge.

Ever since the enactment of Missouri's Workers' Compensation Law eighty-five years ago, the legislature has intended to impose liability upon employers to furnish compensation pursuant to the Act for employee injuries and deaths falling within the Act's scope and to make such compensation under the Act the employees' exclusive remedy. When the legislature included coverage for occupational diseases within the Act's scope over fifty years ago, it intended that workers' compensation be the exclusive remedy for those occupational diseases. Today, the majority disregards this longstanding legislative intent of exclusivity and interprets the Act to permit employees with occupational diseases to proceed with claims for compensation under the common law. Because I believe that such an interpretation is contrary to the legislature's intent, unwarranted in light of the Act's legislative history, and impermissible when considering the Act as a whole, I respectfully dissent.

### *Gunter's Claim is for an Occupational Disease*

Gunter is seeking recompense for an occupational disease. The Act defines an "occupational disease" as "an identifiable disease arising with or without human fault out of and in the course of employment." § 287.067.1, RSMo Cum.Supp.2010. Gunter's claim, that he was exposed to asbestos during the course of his work with KCP & L and that this asbestos exposure directly and proximately caused him to develop mesothelioma, falls squarely within the Act's definition of an occupational disease. "An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability." § 287.067.2. Thus, if Gunter's mesothelioma arose out of and in the course of his employment with KCP & L, and his exposure to asbestos through his employment with KCP & L were the prevailing factor in causing his mesothelio-

ma, his mesothelioma would constitute a compensable occupational disease under the Act.

### Employer Liability and Exclusivity

An employer's liability to furnish compensation to an employee for injuries that fall within the Act's scope is set out in section 287.120, RSMo Cum.Supp.2010, which also makes such compensation the employee's exclusive remedy for the injury:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. . . .

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

These two subsections, which together comprise the Act's exclusivity provision, go hand in hand. As a plurality of the Missouri Supreme Court recently noted, if an employee's injury does not meet the requirements of subsection 1, then "an em-

ployer shall not be liable to the employee under the act" for such injury, and correspondingly, the injury is not subject to the Act's exclusivity as set out in subsection 2. *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations* ("*MARA*"), 277 S.W.3d 670, 679 (Mo. banc 2009). Indeed, instead of being subject to the Act's exclusivity, an employee whose injury does not meet the requirements of subsection 1 of section 287.120 is excluded *from the Act*, as the employer is not liable to furnish compensation to the employee for such injury under the Act. *Id.* at 679–80. Thus, the Act's exclusivity is coextensive with an employer's liability to furnish compensation under the Act. Subsections 1 and 2 of section 287.120 must, therefore, be considered together in determining whether Gunter's occupational disease claim is subject to the Act's exclusivity.[1]

### Principles of Statutory Interpretation

The determination as to whether Gunter's occupational disease claim is subject to subsections 1 and 2 of section 287.120 is a matter of statutory interpretation. The primary goal of statutory interpretation is to ascertain the legislature's intent from the language used and to give effect to that intent. *Ridinger v. Mo. Bd. of Prob. & Parole*, 189 S.W.3d 658, 664 (Mo.App. 2006). Statutes are to be construed consistent with the obvious purpose of the legislature. *United Asset Mgmt. Trust Co. v. Clark*, 332 S.W.3d 159, 167 (Mo.App.

---

1. To justify disregarding section 287.120.1 in interpreting section 287.120.2, the majority asserts that section 287.120.1 "is not the only provision that imposes liability on employers for work-related injury claims" and that section 287.063, RSMo Cum.Supp.2010, and section 287.067.2 also render employers liable for occupational disease claims. I disagree. Section 287.063.1 defines when an employee is "conclusively deemed to have been exposed to the hazards of an occupational disease" but contains no language setting out an employ-

er's liability to furnish compensation for the occupational disease. Likewise, while section 287.067.2 states when an injury by occupational disease is compensable, it, too, does not contain language mandating the employer's liability to furnish such compensation. Although section 287.063.2 does refer to employer liability in the context of occupational disease, it does not impose liability for compensation but, rather, merely specifies *which* employer—to the exclusion of any other employers—is liable for that compensation.

2010). In ascertaining that purpose, it is appropriate to consider the history of the statute. *Id.* Moreover, we do not read a particular statutory provision in isolation. *Id.* Instead, " 'we construe the provisions of a legislative act together and read a questioned phrase in harmony with the entire act.' " *Id.* (citation omitted). In doing so, we avoid interpretations that lead to unreasonable, oppressive, or absurd results. *Id.* We must employ " 'rules of statutory construction that subserve rather than subvert legislative intent.' " *Elrod v. Treasurer of Mo.,* 138 S.W.3d 714, 716 (Mo. banc 2004) (citation omitted). We presume "that the legislature intended that every word, clause, sentence, and provision of a statute have effect," and that "the legislature did not insert verbiage or superfluous language in a statute." *State ex rel. Unnerstall v. Berkemeyer,* 298 S.W.3d 513, 519 (Mo. banc 2009) (internal quotation marks and citations omitted).

### History of Occupational Disease Coverage in Workers' Compensation Law

Missouri voters passed the original version of the Workers' Compensation Law by referendum in 1926. *Staples v. A.P. Green Fire Brick Co.,* 307 S.W.2d 457, 460 (Mo. banc 1957). This original version of the Act covered accidental injuries only and excluded coverage for occupational diseases. *Renfro v. Pittsburgh Plate Glass Co.,* 235 Mo.App. 226, 130 S.W.2d 165, 171 (1939); § 3305(b), RSMo 1929. The Act defined an "accident" as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." § 3305(b), RSMo 1929. The Act defined an "injury" as "vio-

lence to the physical structure of the body and such disease or infection as naturally results therefrom." *Id.* After defining the terms "accident" and "injury," the Act specifically stated, "The said terms shall in no case except as herein provided be construed to include occupational disease in any form." *Id.* The Act recognized the employee's continued right to proceed on claims for occupational disease outside of the Act, stating "that nothing in this chapter contained shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases." *Id.*

The Act's original exclusivity provision, like the present-day section 287.120, performed two functions. First, it imposed liability upon employers subject to the Act to furnish compensation, "irrespective of negligence," for "personal injury or death of the employee by accident arising out of and in the course of his employment" and correspondingly released those employers "from all other liability therefor whatsoever." § 3301, RSMo 1929. *Compare* § 287.120.1, RSMo Cum.Supp.2010. Second, it made the Act the exclusive remedy for "such accidental injury or death." § 3301, RSMo 1929. *Compare* § 287.120.2, RSMo Cum.Supp.2010. Thus, pursuant to the exclusivity provision, the Act, if applicable, was "wholly substitutional in character" and supplanted and superseded any rights and remedies that a plaintiff might have had at common law or otherwise. *De May v. Liberty Foundry Co.,* 327 Mo. 495, 37 S.W.2d 640, 645 (1931).

In 1931, the legislature amended the Act to provide optional coverage for occupational diseases. § 287.020.4, RSMo 1949.[2]

---

**2.** When the legislature amended the Act in 1931 to include optional coverage for occupational diseases, the section containing the

amendment was still numbered section 3305(b). 1931 Mo. Laws 382. The Act was renumbered in 1949 as Chapter 287. Section

In amending the Act to include this optional coverage, the legislature simply added language providing for the election of occupational disease coverage to the statute's existing language in the definitions section of the Act. *Id.* The legislature did not redefine the terms "accident" or "injury," and it did not add a definition of "occupational disease." § 287.020, RSMo 1949. The pertinent definitions provisions, with the new language providing for coverage for occupational diseases in brackets, read:

2. The word **"accident"** as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.

3. The term **"injury"** and **"personal injuries"** shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The said terms shall in no case except as herein provided be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the workman is at work.

4. **"Death"** when mentioned as a basis for the right to compensation means only death resulting from such violence and its resultant effects occurring within three hundred weeks after the accident; provided, that nothing in this chapter contained shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases, [unless the employer shall file with the commission a written notice that he elects to bring himself with respect to occupational disease within the provisions of this chapter and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission, and any employee entering the services of such employer and any employee remaining in such service thirty days after the posting of such notice shall be conclusively presumed to have elected to accept this section unless he shall have filed with the commission and his employer a written notice that he elects to reject this act.]

*Id.* The legislature did not change the exclusivity provision's language imposing liability upon employers to furnish compensation for accidental injuries and deaths and making the Act the exclusive remedy for such accidental injuries and deaths. § 287.120.1 and .2, RSMo 1949.

For almost thirty years after 1931, the references to occupational disease coverage in the definitions portion of section 287.020 remained the only language in the Act "providing directly or by inference for compensation under the Act by reason of occupational diseases." *Staples*, 307 S.W.2d at 460. Because the legislature had not defined "occupational diseases" or changed the definitions of "accident" or "injury" when it added coverage for occupational diseases in the 1931 amendment, it became "the duty of the courts to determine and apply the meaning of the terms ['accident,' 'injury,' and 'personal injuries'] in connection with occupational disease cases, even though [these terms] were not originally intended to apply to such cases." *Renfro*, 130 S.W.2d at 171.

The Missouri Supreme Court addressed the courts' struggle to try to apply the

3305 was renumbered as section 287.020, which is what it is numbered today. For clarity's sake, I will cite to the sections in Chapter 287.

terms "accident" and "injury" in the context of occupational disease cases in *Staples*, 307 S.W.2d 457. The claimants in *Staples* were the widow and surviving children of an employee who died of silicotuberculoses, an occupational disease. *Id.* at 458–59. The employer asserted that the claim for death benefits was barred by section 287.020.4, RSMo 1949, because the employee's death did not occur within 300 weeks after the "accident" occurred, which the employer contended was the day that the employee discovered the disease. *Id.* The claimants argued that a death by occupational disease was not a death by "accident" and, therefore, the 300 weeks' time limit did not apply. *Id.* at 459.

The Supreme Court rejected the claimants' argument, finding that the Act must be construed in such a way to include occupational diseases. *Id.* at 462–63. The Court recognized that an occupational disease was not a "true 'accident,'" as that term was expressly defined in section 287.020.2, because it was not the result of an "unexpected or unforeseen event happening suddenly and violently." *Id.* at 459–60. Nevertheless, the Court also recognized that the legislature had expressed its intent that occupational diseases be covered when it enacted the 1931 amendment giving employers and employees the option to elect occupational disease coverage. *Id.* at 462. Because the legislature did not revise the definitions of "accident" or "injury" and did not define "occupational disease" in that amendment, the Court found that the only way to effectuate the legislature's intent to cover occupational diseases for those who elected such coverage was to broaden the statutory definitions of "accident" and "injury" and construe them "in

harmony with the purpose of the amendment." *Id.* The Court reasoned:

> The legislature has enacted an amendment for the very purpose of authorizing employers and employees to elect to bring occupational disease claims and injuries under the Act, and, respectively, to pay and receive compensation therefor, *in lieu of all common law rights of action.* The very bringing of such claims under the Act presupposes an "injury," and, therefore, an injury has generally been recognized as present and existing in all compensable occupational disease cases. Generally, in compensation cases a compensable injury presupposes an "accident," for an injury is the result of an accident. . . . It is almost unthinkable that the legislature would adopt the amendment in question without contemplating and intending that its previously enacted definitions be broadened to fit the necessities of occupational disease claims.

*Id.* (emphasis added).

The italicized language indicates that the Court in *Staples* recognized that the legislature intended that all of the Act, including section 287.120's exclusivity provision, apply to occupational diseases. This is confirmed by the Court's statement later in the opinion that "[t]here is no indication in the Act that the legislature did not intend for all occupational disease claims to be subject to the same conditions and limitations as other claims." *Id.* at 463.

The Court, therefore, held that the term "accident" must be construed to include a compensable disability resulting from an occupational disease and causing death. *Id.* at 462–63.[3] In so holding, the Court

---

**3.** The Court in *Staples* declined to rule on whether the term "accident" must be construed to include a compensable disability resulting from an occupational disease that

does not cause death, because that issue was not before it. 307 S.W.2d at 463. Two years later, in *Marie v. Standard Steel Works,* 319 S.W.2d 871, 875 (Mo. banc 1959), the Court

also relied upon section 287.020.2's language that "[t]he word 'accident' as used in this chapter shall, *unless a different meaning is clearly indicated by the context,* be construed to mean...." *Id.* at 462. The Court found that the context of the word "accident," as it pertained to section 287.020.4's death provision, required a broader meaning in order to apply the Act to occupational diseases. *Id. Ergo,* the Court in *Staples* found that the word "accident," as it relates to occupational diseases, has a different meaning than the word "accident," as it is defined in the statute.

In 1959, the legislature amended the Act to add two sections specifically addressing occupational diseases. Section 287.067, RSMo 1959, expressly defined the term "occupational disease" to mean "a disease arising out of and in the course of the employment." § 287.067.1. This definition of "occupational disease" did not refer to or require an accident for compensability. *Id.* Also in this section, the legislature articulated when a disease is deemed to arise out of employment, and it recognized loss of hearing due to industrial noise and radiation disability as two types of occupational diseases. § 287.067. At the same time, the legislature enacted section 287.063, RSMo 1959, which set out the procedure for an employer's and employee's election of occupational disease coverage, the notice of election requirements, when an employee is deemed to have been exposed to an occupational disease, which of the employee's employers is liable for compensation, and when the statute of limitations for an occupational disease begins to run.

When the legislature created these new provisions pertaining to occupational disease in 1959, it did not redefine the terms

"accident" or "injury" in section 287.020 to expressly include occupational disease, and it did not change the language of section 287.120's exclusivity provision. §§ 287.020 and 287.120, RSMo 1959. In 1963, the legislature did, however, rewrite section 287.020's definition of "death" to provide that the limitation that a death occur within 300 weeks after an accident to be compensable did not apply to death by occupational disease. § 287.020.4, RSMo Cum. Supp.1963. This indicates that the legislature recognized the distinction between death by accident and death by occupational disease but intended that the Act cover both. " 'When the legislature enacts a statute referring to terms which have had other legislative or judicial meanings attached to them, the legislature is presumed to have acted with knowledge of these meanings.' " *State ex rel. Costco Wholesale Corp. v. Hartenbach,* 267 S.W.3d 725, 729 (Mo.App.2008) (citation omitted). This was tantamount to a legislative imprimatur of the *Staples* decision and its different definitions of the word "accident" in varying contexts of the statutes. Essentially, it was an express affirmation that the Court in *Staples* correctly determined the General Assembly's legislative intent.

In 1974, the legislature amended the Act to make coverage for occupational diseases mandatory. The legislature deleted the language in section 287.063 allowing employers and employees to elect coverage for occupational disease, and it deleted language in section 287.120 stating that only employers who elected to accept the provisions of Chapter 287 were required to furnish compensation under the Act. §§ 287.063 and 287.120.1, RSMo 1978. At the same time, the legislature amended section 287.110, the provision setting forth

---

recognized that the terms "accident" and "injury" in the Act included a compensability

disability from *all* occupational diseases, not just those causing death.

the scope of the Act, to provide that the Workers' Compensation Law applied to all occupational diseases in addition to all injuries. § 287.110.2, RSMo 1978. Again, the legislature did not change the definition of "accident" or "injury" to expressly include occupational disease, and it did not change the exclusivity provision's language requiring accidental injury or death to trigger an employer's liability and the Act's exclusivity.

The 1974 amendments were significant for several reasons. First, by eliminating the option to elect occupational disease coverage, the legislature expressed its intent to make coverage for occupational diseases mandatory for employers and employees subject to the Act. Second, by stating that the scope of the Act covers "all injuries received and occupational diseases contracted in this state," the legislature recognized the difference between injuries by accident and occupational diseases. Nevertheless, the legislature explicitly stated that Chapter 287 applied to both. Third, by deleting the language in section 287.120.1 restricting the Act's application to only employers who elect coverage under the Act at the same time that it deleted the language in section 287.063 providing for the election of occupational disease coverage, the legislature implicitly recognized that the provisions of section 287.120 applied to occupational diseases, even though the Act's definitions of "accident" and "injury" did not ex-

pressly include occupational diseases. It may be assumed that the legislature was aware of Staples's interpretation of the term "accident" and found that no change was necessary to reflect a differing intent. See Hartenbach, 267 S.W.3d at 729.

In the years following the 1974 amendments, the legislature continued to make additions, deletions, and revisions to the occupational disease provisions, to section 287.020's definitions, and to section 287.120. In all of its amendments, however, the legislature did not change the definitions of "accident" and "injury" to include occupational disease, and it did not change the language of the exclusivity provision requiring an accidental injury or death. Nevertheless, in interpreting the Act, courts of this state routinely acknowledged the distinction between accidents and occupational diseases and recognized that the Act covered both. See, e.g., Wolfgeher v. Wagner Cartage Serv., Inc., 646 S.W.2d 781, 785 (Mo. banc 1983); Garrone v. Treasurer of Mo., 157 S.W.3d 237, 243 (Mo.App.2004); Bull v. Excel Corp., 985 S.W.2d 411, 416 (Mo.App.1999); Myers v. Rival Mfg. Co., 442 S.W.2d 138, 140 (Mo. App.1969); Liebrum v. Laclede Gas Co., 419 S.W.2d 517, 520–21 (Mo.App.1967). Throughout this time, the Division of Workers' Compensation of the Department of Labor and Industrial Relations ("Division") also distinguished between accidents and occupational diseases and recognized that the Act covered both.[4]

4. It appears that sometime in the late 1990s, the Division's Administrative Law Judges began using prescribed forms for recording their findings of fact and conclusions of law. The forms, which the Division continues to use, require the judges to address: "Was there an accident or incident of occupational disease under the law?"; "Date of accident or onset of occupational disease"; "State location where accident occurred or occupational disease contracted"; "Was above employee in employ of above employer at time of alleged

accident or occupational disease?"; "Did accident or occupational disease arise out of and in the course of the employment?"; "Describe work employee was doing and how accident happened or occupational disease contracted"; "Did accident or occupational disease cause death?"; and "Parts of body injured by accident or occupational disease." See, e.g., Eaton v. AT & T/Southwestern Bell Telephone L.P., 2011 WL 939214 *1 (March 9, 2011); Honeycutt v. Condaire, Inc., 2002 WL 31233727 *1 (October 3, 2002); Childress v.

To construe section 287.120's exclusivity provision requiring an accidental injury or death in harmony with the Act's express provisions for coverage for occupational diseases, the term "accident" in section 287.120 had to be interpreted to refer to both those events encompassed by section 287.020.2's definition of "accident" *and* occupational diseases.

### The 2005 Amendments

In 2005, the legislature rewrote the Act's definition of an accident. § 287.020.2, RSMo Cum.Supp.2010. The pre–2005 definition of the term "accident" began by stating, "The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean...." § 287.020.2, RSMo 2000. The 2005–amended definition of "accident" begins, "The word 'accident' as used in this chapter shall mean...." § 287.020.2, RSMo Cum.Supp.2010. Under the new definition of "accident," there must be an unexpected traumatic event or unusual strain at an identifiable time and place. *Id.* Additionally, this unexpected event or unusual strain must produce, at that time, "objective symptoms of an injury caused by a specific event during a single work shift." *Id.*

The legislature also rewrote the standard for compensability of a work-related injury and an occupational disease. Before 2005, an injury was compensable if, among other things, "the employment" was "a substantial factor" in causing the injury. § 287.020.3(2), RSMo 2000. An occupational disease was compensable if it met this standard for a compensable injury. § 287.067.2, RSMo 2000. After the 2005 amendments, an injury is compensable only if "an accident" was "the prevailing factor" in causing the injury. § 287.020.3(2), RSMo Cum.Supp.2010.

Likewise, an injury by occupational disease is compensable "only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability." § 287.067.2, RSMo Cum. Supp.2010.

In addition to rewriting the definition of an accident and the standard for compensability of an injury and an occupational disease, the legislature added subsection 10 to 287.020, which says:

> In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of "accident", "occupational disease", "arising out of", and "in the course of the employment" to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo.App. W.D.2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.

The legislature made other changes to section 287.020 in 2005, including:

- Dictating that an injury from an idiopathic cause is not compensable, section 287.020.3(3), RSMo Cum.Supp. 2010;

- Enacting a provision to the effect that injuries sustained while traveling to and from work in a company-owned or company-subsidized vehicle are not compensable, section 287.020.5, RSMo Cum.Supp.2010;

- Precluding compensation for accidents that occur on property not owned or controlled by the employer, even if the accident occurred on a route custom-

arily used by employees to get to and from work, *id.*; and

- Restricting compensation for myocardial infarction or cardiovascular disease or cerebrovascular accident to instances in which the accident is the prevailing factor in causing the resulting medical condition, section 287.020.3(4), RSMo Cum.Supp.2010.

Each of the foregoing provisions constituted a legislative overruling of court decisions interpreting broadly the phrase "accident" in section 287.020.[5]

In the 2005 amendments, the legislature also completely rewrote section 287.800, which, before 2005, had stated that the provisions of Chapter 287 should be "liberally construed with a view to the public welfare." § 287.800, RSMo 2000. The legislature modified section 287.800 to require that the provisions of Chapter 287 now be "strictly" construed. § 287.800.1, RSMo Cum.Supp.2010. Strict construction of a statute means that we do not give a statute "broader application than is warranted by its plain and unambiguous terms" and that we "presume[ ] nothing that is not expressed." *Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo.App.2010) (internal quotation marks and citations omitted) (noting that general co-employee immunity was not expressed in the statute, but had been adopted by judicial decision).

### The Purpose of the 2005 Amendments

The legislature's purpose for the 2005 amendments can be gleaned from various subsections of section 287.020, in which the legislature clearly rejected and overruled the holdings in a substantial number of judicial decisions, with only a few of those cases mentioned by name: *Bennett v. Co-*

*lumbia Health Care*, 80 S.W.3d 524 (Mo. App.2002) (nurse's knee "popped" due to degenerative condition while walking at work), *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999) (health care worker's foot fell asleep, causing her to fall when she stood up), and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999) (employee fell in cafeteria owned by separate entity in same building as her employer's office while she was on lunch break and walking to a table with her lunch). The General Assembly legislatively overruled the numerous cases that it believed had misinterpreted the scope of the phrases "accident" and "arising out of and in the course of employment." In the legislature's view, these cases and the others that were overruled without specific mention[6] had "liberally" interpreted the Act to find that workers' compensation benefits were available for injuries and diseases that were caused by normal activities of everyday life that coincidentally occurred at work or that had some connection to work that the General Assembly considered more remote. Importantly, none of these cases addressed occupational diseases in any way. The abrogation of these cases in no way demonstrates that the legislature intended to exclude occupational diseases from any part of the Act.

### Occupational Diseases and the Exclusivity Provision

Nevertheless, a needlessly narrow construction of the plain language of the 2005–amended definitions of "accident" and "injury" and the exclusivity provision does just that-it restricts, if not eliminates, coverage for occupational diseases under the

---

**5.** *See* footnote 6 *infra.*

**6.** Other cases that were clearly overruled, but not mentioned by name, include *Wells v. Brown*, 33 S.W.3d 190 (Mo. banc 2000); *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534 (Mo. banc 1996); and *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525 (Mo. banc 1993).

Act. For, if we fastidiously construe section 287.120's language that an employer is liable to furnish compensation under the Act "for personal injury or death of the employee by accident" and that the Act's rights and remedies are the employee's exclusive rights and remedies "on account of such accidental injury or death," then occupational diseases must fit within section 287.020.2's definition of "accident" to be covered under the Act and be subject to the Act's exclusivity provision. *MARA*, 277 S.W.3d at 679.[7]

Meticulously applying the plain language of section 287.120 and 287.020.2's definition of "accident" to occupational diseases, an employer is liable under the Act and an employee is excluded from remedies outside of the Act only for those occupational diseases that produce objective symptoms of an injury caused by a specific event during a single work shift. Unlike an injury by accident that occurs on a particular date, however, "an occupational disease develops and manifests itself over a period of time and is not caused by a single event." *Garrone*, 157 S.W.3d at 243. Thus, this needlessly narrow construction of the plain language of section 287.120 appears to eliminate from the Act's scope most, if not all, occupational diseases. As discussed more fully below, however, I do not believe that was the legislature's intent.

## Eliminating or Restricting Occupational Disease Coverage Is Contrary to Legislature's Expressed Intent

Reading the current versions of 287.120 and 287.020.2 as eliminating occupational diseases from coverage under the Workers' Compensation Law is directly contrary to the legislature's express statement of the Act's scope. In section 287.110.2, the legislature states:

*This chapter shall apply to all injuries received and occupational diseases* contracted in this state, regardless of where the contract of employment was made, and *also to all injuries received and occupational diseases* contracted outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide, and *also to all injuries received and occupational diseases* contracted outside of this state where the employee's employment was principally localized in this state within thirteen calendar weeks of the injury or diagnosis of the occupational disease.

(Emphasis added.) Reading sections 287.120 and 287.020.2 as eliminating occupational diseases from the Act's scope also renders superfluous the numerous statutory provisions in the Act specifically addressing occupational disease claims.[8]

---

**7.** In interpreting 287.120's exclusivity provisions and the 2005 amendments to the definitions of "accident" and "injury" in *MARA*, the Supreme Court declared that workers who are excluded from the Act by the narrower definition of accidental injury "have a right to bring suit under the common law, just as they could and did prior to the initial adoption of the act, because they no longer fall within the exclusivity provision of the act as set out in section 287.120." 277 S.W.3d at 680. The Court did not rule which injuries fell within the amended definition of "accident," however, as it stated that it was "not asked to decide what injuries fall within the definition of 'ac-

cident' in section 287.020.2 and, therefore, no opinion is expressed." *Id.*

**8.** *See* § 287.020.4 (providing time limit for compensable death by occupational disease); § 287.063.1, RSMo Cum.Supp.2010 (setting out presumption of exposure for occupational disease); § 287.063.2 (stating which employer is liable for compensation for occupational disease); § 287.063.3 (stating when statute of limitations for occupational disease begins to run); § 287.067.1 (defining occupational disease); § 287.067.2 (stating when injury by occupational disease is compensable); § 287.067.3 (recognizing injury by repetitive

Indeed, even reading sections 287.120 and 287.020.2 not to eliminate occupational diseases but merely to narrow the Act's coverage to only those occupational diseases that produce objective symptoms of an injury caused by a specific event during a single work shift (if such an occupational disease exists) directly conflicts with statutory provisions defining and prescribing the parameters of compensable occupational disease claims. The most obvious of these is section 287.067.3, which provides for the compensability of repetitive motion injuries. *Repetitive* motion injuries, by their very nature, do not occur during a single work shift. We know that the legislature recognized this because it said in section 287.067.8 that a current employer is not liable for the occupational disease of repetitive motion injury where the employee's exposure to the repetitive motion *"is for a period of less than three months"* and exposure to the repetitive motion with the immediate prior employer was the prevailing factor in causing the injury. (Emphasis added.)

Other statutes also indicate that the legislature did not intend to limit compensation of occupational diseases to single work shift events. In prescribing the presumption of exposure for occupational diseases, section 287.063.1 says that an employee "shall be conclusively deemed to have been exposed to the hazards of an occupational disease when *for any length of time,* however short, he is employed in an occupation or process in which the hazard of the disease exists." (Emphasis added.) In prescribing which employer is liable for compensation for an occupational disease, section 287.063.2 says that "[t]he employer liable for the compensation in this section provided shall be the employer in whose employment the employee was *last exposed to the hazard of the occupational disease* prior to evidence of disability, *regardless of the length of time of such last exposure."* (Emphasis added.) For loss of hearing due to industrial noise to be compensable as an occupational disease, section 287.067.4 requires that the loss of hearing be due to *"prolonged exposure* to harmful noise in employment." (Emphasis added.) These statutory provisions speak in terms of an employee's exposure to the

motion as occupational disease); § 287.067.4 (recognizing loss of hearing due to industrial noise as occupational disease); § 287.067.5 (recognizing radiation disability as occupational disease); § 287.067.6 (recognizing when diseases of lungs are occupational diseases); § 287.067.7 (recognizing contagious or communicable disease as occupational disease); § 287.067.8 (stating which employer is liable for compensation for occupational disease due to repetitive motion); § 287.070, RSMo 2000 (recognizing occupational diseases related to cleanup of illegal drug laboratory); § 287.127.1, RSMo Cum.Supp.2010 (requiring employers to post notice advising employees of duty to report occupational diseases within thirty days of time employee becomes reasonably aware of work-relatedness of illness); § 287.197.1, RSMo Cum. Supp.2010 (defining loss of hearing due to industrial noise occupational disease); § 287.197.2 (prescribing calculation of percentage of occupational deafness); § 287.197.3 (prescribing calculation of disability payments for occupational deafness); § 287.197.7 (prescribing timing of claim for occupational deafness); § 287.197.8 (stating which employer is liable for compensation for occupational deafness); § 287.266.2, RSMo 2000 (providing for recovery of payments made to person eligible for public assistance for occupational disease); § 287.266.6 (stating department of social services's rights regarding payments to provider for persons eligible for public assistance for injury by occupational disease); § 287.420, RSMo Cum.Supp.2010 (requiring employee to give employer written notice of occupational disease within thirty days after diagnosis); § 287.902, RSMo 2000 (creating Missouri Employers Mutual Insurance Company to insure employers against occupational disease).

occupational disease hazard over a period of time—not in a single work shift.

### Section 287.120 Continues to Include Occupational Diseases

Legislative intent is the pole star of statutory interpretation and construction. Once determined, the result is ordained and a liberal versus strict construction is a secondary, if not irrelevant, consideration.[9] Strict construction is neither a directive to read one statute in isolation nor a directive to read one statutory provision in such a way as to render other provisions of a comprehensive act absurd or superfluous. Strict construction of the Act does not require, and, indeed, the canons of statutory construction do not permit, an interpretation of section 287.120 that finds that, following the 2005 amendments, occupational diseases either (a) are no longer covered by the Act; (b) are covered, but only when the occupational disease is the result of a specific event during a single work shift; or (c), are covered, but the employer is not entitled to the benefit of exclusivity under section 287.120.2. To find that occupational diseases are no long-er covered by the Act after the 2005 amendments is not only directly contrary to the legislature's express inclusion of occupational diseases within the Act's scope, but it renders superfluous the myriad statutory provisions specifically addressing occupational diseases—many of which were also amended in 2005.[10] To find that occupational diseases are covered, but only when the occupational disease is the result of a specific event during a single work shift, is contrary to several statutory provisions that indicate that occupational disease exposure occurs over time. Finally, to find that occupational diseases are included in Chapter 287, but that the employer is no longer entitled to the benefit of exclusivity under section 287.120.2, is contrary to the longstanding principle that the Act is not supplemental or complimentary but is "wholly substitutional in character," supplanting and superseding any rights a plaintiff might have at common law or otherwise. *State ex rel. Tri–County Elec. Coop. Ass'n v. Dial,* 192 S.W.3d 708, 710 (Mo. banc 2006); *De May,* 37 S.W.2d at 645.

---

9. Indeed, when the legislative intent demands it, we have departed from the plain meaning of the words used and found "or" to mean "and," and "shall" to mean "may." *See, e.g., Hawkins v. Hawkins,* 511 S.W.2d 811, 813 (Mo.1974); *Farmers & Merchs. Bank & Trust Co. v. Dir. of Revenue,* 896 S.W.2d 30, 33 (Mo. banc 1995).

10. These indicia of legislative intent and the specific provisions of the Act that address occupational diseases distinguish this case from *Robinson,* 323 S.W.3d 418, where the invocation of "strict construction" was largely determinative. Before the 2005 amendments, courts had relied upon a judicial extension of immunity for co-employees to " 'fix' the Act's omission of agency principles in determining liability for workplace injuries." *Id.* at 423. In *Robinson,* we reevaluated this judicial construct of co-employee immunity under principles of strict construction in light of the 2005 amendment to the Act. *Id.* at 424. In doing so, we determined that a strict construction of the word "employer" in section 287.120's exclusivity provisions did not shield a co-employee from civil liability. *Id.* at 423–25. *Robinson* is distinguishable from this case because there were no statutory provisions addressing co-employee immunity. Here, there are numerous statutes expressly addressing occupational diseases. To apply a "strict" construction of section 287.120 to preclude the exclusivity provisions' application to occupational diseases would disregard the occupational disease statutes and lead to the absurd result of effectively eliminating occupational diseases from the Act's scope. It is one thing to take the legislature's admonition concerning strict construction seriously as it relates to a judicially-created doctrine, as was the case in *Robinson,* and entirely another to utilize the admonition to frustrate the announced intention of the legislature.

### No Unintended Consequences

Once legislative intent has been determined and becomes the pole star of statutory construction, there can be no unintended consequences of legislation by judicial interpretation. To find "unintended consequences" by closely parsing the language is to take a very wooden approach to statutory interpretation, as though the words of a single section of the statute exist in a vacuum. In the face of the legislative history before us, it cannot be seriously contended that the legislature intended to decouple the Act's coverage from the Act's exclusivity. Mutuality of the Act's benefits and burdens is a fundamental precept of the Act. "In return for providing compensation which is both assured and insured, the employer is relieved of the burden of civil actions for damages." *Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 162 (Mo. banc 1991) (Blackmar, J., concurring), *overruled on other grounds by McCracken v. Wal–Mart Stores East, LP*, 298 S.W.3d 473, 478–79 (Mo. banc 2009). Any decoupling of the Act's coverage from the Act's exclusivity is violence done the legislative scheme as it has existed for over fifty years and a position taken by neither party to this case.

Ever since the legislature added coverage for occupational diseases in 1931 and made it mandatory in 1974, the legislature's intent has been for the Act to cover occupational diseases and to do so in the manner prescribed by the statutory provisions addressing occupational diseases. Historically, the courts and the Commission have effectuated the legislature's intent by distinguishing between an accident and an occupational disease but also recognizing that the Act covers both. For the Act to cover both, however, section 287.120's references to "accidental injury or death" necessarily had to encompass both section 287.020.2's definition of an accident and occupational disease.

I do not believe that the legislature expressed a different intent regarding the Act's coverage of occupational diseases when it enacted the 2005 amendments. The majority's construction of section 287.120 to sever compensability from exclusivity was as logical at the time *Staples* was decided as it is at present. The gravamen of *Staples* is that, no matter how the word "accident" is defined, it must be read to include occupational disease to avoid an absurd and irrational result. The majority's reasoning that a change in the definition of the word "accident" requires a different conclusion misses the point of *Staples* altogether.

To continue to subserve rather than subvert the legislature's intent, I believe that we must read section 287.120's exclusivity provision in harmony with the occupational disease provisions. I would find that section 287.120's language stating that an employer is liable under the Act and that an employee is excluded from remedies outside of the Act for "accidental injury or death" arising out of and in the course of employment includes both an "accident," as defined in section 287.020.2, and an "occupational disease," as defined in section 287.067.

Although this is a case of first impression for the appellate courts of this state since the 2005 amendments took effect, the United States District Court for the Western District of Missouri recently addressed this exact issue in *Idekr v. PPG Industries, Inc.*, 2011 WL 144922 (W.D.Mo. Jan.18, 2011). As in this case, the employee in *Idekr* filed a tort claim against her former employer for what was, essentially, an occupational disease. *Id.* at *1–2. When the employer contended that the employee's tort claim was barred by the

Workers' Compensation Law, the employee argued that the 2005 amendments eliminated occupational diseases from the Act's scope or restricted coverage to only those that were caused in a single work shift pursuant to the narrow definition of "accident." *Id.* at \*2. The district court disagreed, noting, as we have, the legislature's express declaration in section 287.110 that the Act covers occupational diseases; the fact that, in 2005, the legislature had amended, rather than eliminated, numerous provisions within the Act relating to occupational diseases; and the Missouri Supreme Court's recognition, before the 2005 amendments, that to effectuate the legislature's express intent that the Act cover occupational diseases, the definitions of "accident" and "injury" had to be read to include occupational diseases. *Id.* Based upon these considerations, the district court concluded that "the Missouri Supreme Court would hold that the 2005 amendments did not remove occupational diseases from the Workers' Compensation Law's scope." *Id.* While I recognize that federal decisional law, although persuasive, is not binding, I would conclude that *Idekr*, which expressly decided the issue before us, tracked applicable Missouri law and reached the correct result.

### The Commission is the Initial Forum for Determination of Gunter's Claims

Because I believe that claims for occupational diseases clearly continue to be subject to section 287.120's exclusivity provision, I would also find that such claims are committed to the Commission's initial determination. Courts used to say that the Commission had "subject matter jurisdiction" over workers' compensation claims. *See, e.g., State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621–23 (Mo. banc 2002), *over-*

*ruled by McCracken*, 298 S.W.3d at 478–79. In *Webb ex rel. J.C.W. v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009), however, the Supreme Court explained that, pursuant to article V, section 14 of the Missouri Constitution, "'[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal.'" Because employees' claims against employers are civil matters, the circuit court clearly has subject matter jurisdiction over such claims.

After *Webb*, the Supreme Court further clarified in *McCracken* that the question as to whether a workers' compensation claim is committed to the Commission in the first instance is not an issue of subject matter jurisdiction but an issue of the circuit court's statutory authority to proceed. 298 S.W.3d at 477. The party asserting that the Act applies and, therefore, that the claim is committed to the Commission's initial determination must plead and prove it as an affirmative defense or else it is waived. *Id.* at 479.[11]

*McCracken* showed how this works in practice. If a tort defendant does not properly raise the issue of an employer-employee relationship, the circuit court may proceed to adjudicate the tort claim according to common law principles. *Id.* The defendant cannot later attack the judgment as having been rendered without "subject matter jurisdiction." *Id.* But if the defendant initially shows that there is an employer-employee relationship, and the injury apparently arose out of that relationship, the circuit court must dismiss the matter and allow the matter to proceed in the Commission. *See id.* at 477. The circuit court does not have the option of retaining the case, proceeding to adjudicate the causation issue and the negligence issue, and then entering judgment accord-

---

11. In this case, KCP & L properly raised the Act's applicability as an affirmative defense.

ingly. While both the Commission and the court may have concurrent subject matter jurisdiction of the dispute, only one forum is the proper initial forum under these circumstances. The case must be dismissed so that it can be processed in the Commission because the Commission is the only proper initial forum for the matter in this procedural setting. *See id.* at 477–78.[12]

Along with the proper interpretation of the scope of the exclusivity clause, the need for the utilization of the proper initial forum supports granting the writ in this case. The reason this makes abundant sense becomes evident upon reflection. Gunter contends that the exposure through employment was not the prevailing factor in his occupational disease. Without an extended evidentiary hearing with live witnesses and expert testimony as to the mesothelioma, no fact-finder can know the truth of his assertion. If the workplace exposure were the prevailing cause, then his exclusive remedy would be under Chapter 287. KCP & L and its insurer would be responsible for the compensation to be paid under the Act, with KCP & L presumably entitled to assert claims for subrogation against the manufacturers. The determination of causation issues (and thereby, indirectly, liability issues) does not lend itself as readily to resolution by summary judgment as does the determination of such matters as employment (as in *McCracken*).

Gunter understandably wishes to have a *jury* try the issue of causation so that he could ask the jury to find that the workplace exposure existed so to create liability in tort under standards applicable to toxic tort cases, but that it was not the prevailing factor in his occupational disease. KCP & L, on the other hand, would presumably ask the jury to find that the workplace exposure was the prevailing factor. Thus, in the civil tort case, KCP & L would presumably be trying to show that it is *more* at fault, while Gunter would be trying to show that KCP & L is *less* at fault. If the case should be decided such that the workplace injury were found to be the prevailing factor, and accordingly, the case must be reinstituted in the Commission, each side would then presumably discharge its prior expert witnesses and hire new experts to try the issue in reverse in the Commission (unless there were an issue of res judicata or judicial estoppel that would preclude such reverse retrial).[13]

Also, if KCP & L were successful in proving to the jury that the workplace exposure was actually the prevailing factor in the disease, Gunter might argue that instead of dismissing the matter in circuit court (perhaps due to limitations reasons, or just to save time), the circuit court should proceed to act like an Administra-

---

12. I am reluctant to use the term "primary jurisdiction" not because I believe it erroneous but to avoid the confusion that seems to permeate any use of the word "jurisdiction." Reminiscent of Mark Twain's quote from *Pudd'nhead Wilson's New Calendar* in *Following the Equator* (1897):

> We should be careful to get out of an experience only the wisdom that is in it— and stop there; lest we be like the cat that sits down on a hot stove-lid. She will never sit down on a hot stove-lid again—and that is well; but also she will never sit down on a cold one anymore.

13. This could give rise to a whole host of problems. If the circuit court's adjudication were regarded as res judicata or estoppel, claimants who are anticipating having a difficult time proving liability under Chapter 287 might elect to go to the circuit court first in order to receive the benefit of having the employer prove prevailing factor; then, upon going to the Commission, the claimant could rely upon the circuit court's ruling to prove the necessary causation for purposes of Chapter 287.

tive Law Judge and enter an award pursuant to Chapter 287. If the circuit court did purport to enter an award pursuant to Chapter 287, one might wonder whether the appeal by any party would go to the Commission or directly to this court.

All of this is simply to make the point that judicial policy requires that, regardless of the degree to which exclusivity of remedy applies, there should be one initial forum for workplace injury and disease claims. It does not mean that the circuit court does not have subject matter jurisdiction of such claims. The policy of one initial forum is not a jurisdictional doctrine; it is a judicial policy independent of interpreting the meaning of "accident" under section 287.020. If both parties prefer to try the claim as a tort case in the circuit court rather than as a workers' compensation claim, the defendant need not raise exclusivity as an affirmative defense, and the circuit court clearly can proceed to adjudicate the claim. *McCracken*, 298 S.W.3d at 479. But if ignoring and waiving Chapter 287 and waiving the right to have the Commission make the initial determination as to the proper forum is not consensual, there are multiple sound policy reasons to require that the initial forum be the Commission. This policy would rest, of course, on the same footing (to a large extent) as the doctrine of exhaustion of administrative remedies. It would involve some of the same policy reasons, but actually, because of the unique nature of the Workers' Compensation Law, such policy reasons may exist with even greater force.

Gunter wishes to suggest that if a claimant asserting a claim against an employer contends that he or she does not have a covered claim under Chapter 287, the claimant should have a free pass to proceed directly to circuit court and be able to stay there until the claims have been adjudicated. Gunter argues that such is the

logical understanding of *MARA*. Such would create a system that allows the claimant the unqualified, unilateral right to select his or her own initial forum. If that were the effect of *MARA*, then *McCracken* would make no sense, because *McCracken* determined that, where the facts show that there is an employer-employee relationship, the case should be dismissed so that it may be conducted in the initial instance as a workers' compensation claim in the Commission. *McCracken* allows the circuit court to be the initial arbiter of the existence of the *employment relationship*, with the Commission the initial arbiter of the compensability of the claim. *McCracken* never envisioned what Gunter argues for here.

KCP & L had the burden of showing in its motion for summary judgment that there was no genuine dispute of material fact with regard to the following elements: (1) Gunter's alleged claims were based upon an occupational disease arising out of and in the course of his employment with KCP & L; and (2) Gunter was acting as an employee of KCP & L. *See Treaster v. Betts*, 324 S.W.3d 487, 490 (Mo.App.2010); *Fortenberry v. Buck*, 307 S.W.3d 676, 679 (Mo.App.2010). It should be noted that there is no third requirement of showing that the injury is not compensable under the Workers' Compensation Law. If there were such a third requirement, then the circuit courts would be adjudging compensability and thereby performing the statutorily-created function of the Commission.

In its motion for summary judgment, KCP & L asserted that it was uncontroverted that Gunter was employed by KCP & L; that Gunter claimed to have been exposed to asbestos during the course of his work for KCP & L; that Gunter claimed that this exposure caused him to develop an asbestos-related disease; and

that KCP & L qualified as an "employer" under the Act because it employed more than five persons at all relevant times during Gunter's employment. KCP & L met its burden.

In response, Gunter admitted these facts but noted that, at the same time that he worked for KCP & L, he worked as a home remodeler and was exposed to asbestos as part of this outside work. Thus, Gunter contends that the undisputed facts do not establish that his workplace exposure to asbestos was the prevailing factor in causing his mesothelioma, which section 287.067.2 requires for his mesothelioma to constitute a compensable occupational disease. This is an issue of causation, however, which is committed to the Commission's initial determination. *See Killian,* 802 S.W.2d at 161.

### Conclusion

Gunter's tort claims against KCP & L seek recompense for the occupational disease of mesothelioma that he allegedly incurred as a result of his exposure to asbestos during and in the course of his employment. His claims are subject to section 287.120's exclusivity provision and are, therefore, exclusively covered by the Workers' Compensation Law. Gunter's claims are committed to the Labor and Industrial Relations Commission's initial determination. KCP & L properly pled the Act's applicability as an affirmative defense and proved it in its motion for summary judgment. Thus, I would find that the circuit court erred in overruling KCP & L's motion for summary judgment and make the preliminary writ of prohibition permanent.

JAMES M. SMART, JR., Judge.

I agree with the comprehensive dissenting opinion of Judge Welsh. I write sepa-

rately in dissent primarily to emphasize that much of the back-and-forth analysis as to the intent and effect of the 2005 amendments is not dispositive as to whether the preliminary writ should be made permanent. While there are different views as to the effect of the 2005 amendments, it is incorrect to believe that there is *any* view that warrants allowing Mr. Gunter's case to proceed in circuit court. And that is because, pursuant to statute and judicial decision, the primary jurisdiction for any claim of workplace injury arising out of an employment relationship is in the Division of Workers' Compensation.

Apparently, every judge participating in this writ proceeding agrees that the General Assembly *did not* categorically remove occupational disease claims from the scope of compensability under the Act. Accordingly, it is basic law that this case, which alleges occupational disease related to workplace employment, must first go to the Division. If, after the claim is adjudicated in the Division, the issues of the ultimate meaning and effect of the 2005 amendments remain, they may be resolved at that time (unless the General Assembly acts in the interim to clarify any confusion).

But before discussing further the exclusiveness of the authority of the Division to resolve claims of workplace injury, I must comment briefly on the notion that the General Assembly's amendment to section 287.800 [1] calling for "strict construction" of the provisions of the chapter is a factor in our approach to this case. Without trying to sound cute, I suggest that we should not use undue liberality in construing the specification of a requirement of "strict construction." That is because the clearly

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2010 Cumulative Supplement, unless otherwise noted.

stated purpose of the 2005 amendments to Chapter 287, like the 1993 amendments, was to legislatively overrule judicial decisions that the General Assembly believed were unduly expanding the scope of compensability:

> In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of "accident," "occupational disease," "arising out of," and "in the course of employment".... 

Section 287.020.10. And then, if that were not clear enough, the legislature went ahead to specifically overrule *by name* certain decisions that were illustrative of what the General Assembly regarded as the judicial tendency to expand compensability:

> to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care*, 80 S.W.3d 524 (Mo.App. W.D. 2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999), and all cases citing, interpreting, applying, or following those cases.

*Id.* And, as Judge Welsh's dissent points out, there were other decisions, though not specifically named, that clearly came under the knife.[2]

What is obvious is that the General Assembly, while clearly retaining coverage for occupational disease claims, decided to restrict compensability for certain occupational diseases as well as for "accidents." This is most evident in other amendments to the chapter, including those related to the accrual of an occupational disease for repetitive motion injury.[3]

If I may use a rather poor analogy, much of the confusion comes from the fact that the General Assembly, in its effort to "tidy up the garden," was not content to take out some judicially-planted "weeds" that it regarded as noxious. The General Assembly also apparently decided to attack what it saw as the *root system* of the difficulty. Therefore, the General Assembly took the radical step of eliminating the concept in 287.800 of "liberal construction with a view to the public welfare." It did this, I suggest, thinking that to do so would secure the garden against what it saw as errant judicial tendencies to conflate "public welfare" with *claimant* welfare. I see no other plausible explanation for the revision to section 287.800. It seems highly extraordinary for a legislative body to ask the courts to apply "strict construction" to *every* aspect of a massive chapter that sets up an entire agency and a complicated and extensive regulatory scheme, when that same legislature has told us in section 1.010 generally how to construe its statutes: "all acts of the general assembly, or laws, shall be *liberally construed, so as to effectuate the true intent and meaning thereof.*" I am not aware of any legislative body anywhere that has ever taken a major piece of remedial and regulatory legislation, and has said, in reference to the whole thing: "Construe every provision of this entire act strictly." I cannot buy that. The change to 287.800 was, in my view, an ill-advised oversight of a legislative body trying to engage in reform.

"In interpreting statutes, 'our polestar is the intent of the legislature. Construction must always seek to find and further that intent.'" *Garland v. Dir. of Revenue*, 961 S.W.2d 824, 830 (Mo. banc 1998) (citation

---

2. See footnote 6 of Judge Welsh's dissent.

3. *See, e.g.,* this writer's concerns about the problems created by the 2005 amendments to

section 287.063.3 in *Miller v. U.S. Airways Group, Inc.*, 316 S.W.3d 462, 469–72 (Mo. App.2010) (Smart, J., concurring).

omitted). The starting point is the ordinary meaning of the words. § 1.090. When the ordinary meaning is absurd or so strained as to seem to not fit the overall legislative objectives, we resort to other rules of construction to gain the legislature's true intent. *See Elrod v. Treasurer of Mo.*, 138 S.W.3d 714, 716 (Mo. banc 2004); *Phillips v. Am. Motorist Ins. Co.*, 996 S.W.2d 584, 592 (Mo.App.1999). The rules of statutory construction are merely aids that allow the court to ascertain the legislature's intended result. *See Edwards v. St. Louis County*, 429 S.W.2d 718, 722 (Mo. banc 1968).

It is the unusual case in which we say, "The legislature did not mean the exact words that it used here." But we *have* said that when we were convinced. For instance, in the case in 1999 involving the Missouri Wiretap Statute, *Phillips v. American Motorist Insurance Co.*, the language used by the legislature in section 542.418.1, RSMo 1994, taken at face value, meant that no court could receive in evidence (in any civil or criminal case except a suit under the Wiretap Act itself) any testimony concerning any electronic communication (including a telephone call, e-mail communication, telegram, etc.). 996 S.W.2d at 590. But in examining the overall purposes of the statute, we realized what was *really* intended was that no electronic communication could be received *if it had been obtained by law enforcement officers as a result of an unauthorized wiretap. Id.* at 593. Due to a drafting error, the statutory provision did not convey what the legislature intended, but we were not handcuffed in our interpretation by their poor drafting. *Id.* at 593–94. Here, also, in this case, we should not be handcuffed.

The amendment to 287.800 was not a routine revision. I believe the error was as to the *scope* of the command—the language extending the strict construction requirement to *every* provision of the chapter. I am convinced that the General Assembly never intended for the concept of "strict construction" to be applied indiscriminately to *all* of the provisions of Chapter 287 (including, for instance, the exclusivity language of section 287.120). Rather, it was aimed at the concepts related to compensation of claims.

The circuit court's order denying KCP & L's motion and allowing the case to go to trial indicates that the court believed either: (1) that claims of occupational disease are no longer included within the scope of the Act's coverage; or (2) the legislature intended to allow an occupational disease claimant to select the forum most likely to suit the possible success of the claim asserted. Under the circuit court's theory, if Plaintiff Gunter wishes to plead that his work exposure was *not* the prevailing factor in his disease, he may proceed to circuit court. On the other hand, if he wishes to plead that the work exposure *was* the prevailing factor, he may proceed to the Division of Workers' Compensation. Also, I would assume that if he loses in either forum, he may then proceed to the other forum and pursue his claim there.[4]

One problem with the circuit court's interpretation is that we all know that it is extremely unlikely that the legislature intended to abolish one of the primary foundational aspects of the Workers' Compensation consensus: the requirement that the exclusively authorized route for a claim

---

**4.** Of course, there would be no bar of res judicata, because the issues as to causation in the case would be very different.

is in the Division of Workers' Compensation.

Here, we have a case in which Plaintiff Gunter claims disease from exposure to asbestos that occurred in the workplace while he was working for KCP & L. This is not a case in which the existence of the employment relationship was in doubt, as it was in *McCracken v. Wal–Mart Stores East, LP*, 298 S.W.3d 473, 479 (Mo. banc 2009). In *McCracken*, the petition did not appear to be a workers' compensation claim. The defendant raised the issue of "statutory employment." As to that issue, which was strictly a legal issue, based on agreed facts, the Court had jurisdiction to decide the issue just as much as the Division did. Because the case was already in the circuit court, it was entirely unnecessary to refer the matter to the Division. The Court said that the circuit court could decide, on motion for summary judgment, whether, as a legal issue as to which the facts were undisputed, a statutory employment relationship existed. *Id.* at 479.

In *McCracken*, the Court was not professing to say that if there were factual disputes about such matters as causation, extent of injury, and so on, the circuit court had authority to go ahead and resolve those issues. Rather, the Court made very clear:

> [T]his does not mean that [the alleged plaintiff-employee] has an undefeatable right to have his claim determined in circuit court just because he chose to file it there in the first instance, without regard to whether ... his claim is otherwise one that Missouri statutes commit to determination by the Commission. Rather, it means that this issue should be raised as an affirmative defense to the circuit court's *statutory authority to proceed* with resolving his claim.

*Id.* at 477 (emphasis in original).

The Court stated specifically that there are claims that the "*Missouri statutes commit to determination by the Commission.*" *Id.* When it is not clear, absent adjudication, whether there is an employer-employee relationship for purposes of the Act, the court must adjudicate whether the claim in question is one that is "committed to determination by the Commission." Here, the pleadings make clear, absent any adjudication, that KCP & L is an employer, and that Gunter was employed by KCP & L, and he claims a work-related exposure.

In *McCracken*, the Court was *affirming* the settled doctrine that the Division of Workers' Compensation is generally the *only* proper place for claims that involve an employment relationship and an allegation of a work-related injury. *See also State ex rel. Consumer Adjustment Co., Inc. v. Anderson*, 815 S.W.2d 84, 86 (Mo. App.1991) ("[P]laintiff cannot proceed with the underlying action [in the circuit court] until the Commission has determined that the injury did not arise out of and in the course of his employment.").

As KCP & L points out, the Supreme Court in *Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 160 (Mo. banc 1991), stated, "courts will not decide a controversy involving a question within the jurisdiction of an administrative tribunal until after that tribunal has rendered its decision." Also, in *Goodrum v. Asplundh Tree Expert Co.*, 824 S.W.2d 6, 9–10 (Mo. banc 1992), the Court reiterated this understanding:

> If the Commission should determine it has no jurisdiction, the matter may proceed directly to the circuit court. On the other hand, the Commission has *exclusive jurisdiction in the first instance* as to matters covered by the Workers' Compensation Act, and if the Commission issues an award, judicial review proceeds directly to the appellate courts.

(Emphasis added.) If one does not like the term "primary jurisdiction," one may chose to refer to this jurisdiction as "exclusive jurisdiction in the first instance."

In *Killian*, the Missouri Supreme Court expressly *rejected* the plaintiff's argument that the trial court could determine the issue of whether there was an "accident" within the meaning of the Act. 802 S.W.2d at 160. And the concurring opinion of the then-Chief Justice reminded us of the historic bargain which created the exclusive statutory jurisdiction of the Division. *Id.* at 162 (Blackmar, C.J., concurring). He stated:

> The workers' compensation statutes provide mutual benefits and burdens. In return for providing compensation which is both assured and insured, the employer is relieved of the burden of civil actions for damages. Claimants, concerned because of the modest scale of compensation benefits when compared to some civil recoveries, have often tried to get around the interdiction of civil actions by astute pleading.

*Id.* (Blackmar, C.J., concurring).

We should not, in Mr. Gunter's case, be lured into undermining one of the foundations of the agreement underlying the Act. The General Assembly has the authority to set up administrative agencies and to grant them exclusive responsibility for the adjudication of certain types of claims.

The decision in *Harris v. Westin Management Co. East*, 230 S.W.3d 1 (Mo. banc 2007) is illustrative. In that case, the plaintiff was on his way to work as a passenger in a vehicle that was struck by a van driven by a Westin employee. The collision occurred on a public street near the Westin Hotel. The suit was filed in circuit court. The fact that the plaintiff was also an employee of Westin was not facially relevant,[5] but defendant Westin, in order to try to redirect the case, raised the issue, contending that jurisdiction lay solely in the Division of Worker's Compensation. That issue, of course, was clearly a legal issue (not even a mixed factual-legal issue) that the Court could easily resolve without referring the matter to the Division as a useless act, only to have it return again to circuit court. The concept of what is often called "primary jurisdiction" is grounded partially in practicality and partially in the concept of separation of powers. It permits a "workable allocation of business" between the courts and the agencies established by the legislature. *Civil Aeronautics Bd. v. Modern Air Transp., Inc.*, 179 F.2d 622, 625 (2d Cir. 1950). It applies where a claim that could (originally) have been addressed in a court has, under a regulatory scheme, been placed under the special competence of an administrative body. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

Neither *McCracken* nor *Harris* was a case involving causation, existence of injury, or extent of injury. *McCracken* was limited to the issue of determining whether there was an employment relationship. *Harris* was limited to determining whether the employee, who admittedly had not reached his place of employment yet and had not clocked in, had gotten close enough to his workplace to be considered "in the course of" his employment. The basic facts in both cases were not in dispute. Nothing about *McCracken* or *Harris* undermines the Workers' Compensation comprehensive "bargain" to take work-related claims (involving causation, extent of injury, and so on) against the employer out of the tort system and put

5. There is no indication that it even appeared from the petition that Harris worked for Westin or that anyone thought that Harris had a workers' compensation claim.

them in the hands of the Division of Workers' Compensation. They do not undermine the bargain referred to in as the Workers' Compensation Act.

This case, in contrast, would accomplish such an undermining. It would allow a civil jury the initial right to decide, after hearing the conflicting medical testimony, the *extent* to which the exposure to asbestos at KCP & L was the efficient cause of the occupational disease of mesothelioma. It would be a ground-breaking change in the law to allow a claim that, on its face, purports to have arisen out of an employment relationship, to be heard in the first instance in circuit court. This would be an entirely new concept to the legislature—who, by the way, gets to have the last word whenever there is confusion as to what it intended.

Moreover, there are other aspects of this primary statutory jurisdiction that go beyond holding to the "agreement." There is a certain degree of expeditiousness in the avoidance of the jury trial and the resolution of the factual medical matters by administrative law judges who are familiar with many aspects of medical testimony. We also avoid having to develop two bodies of jurisprudence, one only for the LIRC and the Division, and one for juries, who need instructions in work-related occupational diseases in the circuit courts where, as in this case, the application of the Act is contested. We also do not have to have parties being forced to strategically plead inconsistently "against themselves" in order to try to gain a footing in the initial forum of preference.

As KCP & L also points out, in the 2005 amendments themselves, the General Assembly formally codified the doctrine of the primary exclusive jurisdiction of the Division of Workers' Compensation in those amendments by enacting section 287.801, which states:

Beginning January 1, 2006, only administrative law judges, the commission, and the appellate courts of this state shall have the power to review claims filed under this chapter.

Notably, the power of the courts to adjudicate claims filed "under the chapter" rests solely in the *appellate* courts of the state, along with the power of the administrative law judges and the Commission, which have the power to review (which in this context probably means "adjudicate") claims.

Also, it should be noted that section 287.800.2 makes no reference to circuit courts adjudicating claims arising under the Act, including occupational disease claims, when it states:

Administrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, and the division of workers' compensation shall weigh the evidence impartially without giving the benefit of the doubt to any party when weighing evidence and resolving factual conflicts.

All of this is further evidence that the legislature did not contemplate the circuit courts exercising original adjudicatory power over claims for occupational disease.

Plaintiff is simply mistaken when he argues that he is entitled to circumvent the primary exclusive statutory jurisdiction of the Division of Workers' Compensation and try his workplace occupational disease case to a jury, asking the jury to decide causation issues, including the degree to which his work exposure was the prevailing factor in the development of his disease, whether the disease arose out of and in the course of his employment, and so on.

### Summary

If Plaintiff Gunter were correct that the General Assembly did in fact categorically

eliminate occupational disease from the coverage of the scope of the Workers' Compensation Act, it would be obvious that the preliminary writ in this case should be dissolved. Of course, he is not correct in that regard, as is amply demonstrated in both the majority and dissenting opinions. And if, as even the majority agrees, the General Assembly did *not* eliminate occupational disease from the coverage of the Act, then it is entirely appropriate to make the writ permanent so that this matter may be initially determined in the Division. *See, e.g., State ex rel. McDonnell Douglas Corp. v. Luten,* 679 S.W.2d 278 (Mo. banc 1984); *Consumer Adjustment Co.,* 815 S.W.2d at 86.

Though KCP & L agrees that this case does not involve an "accident" within the definition of 287.020, *it has not agreed* that the exclusivity clause of 287.120 does not apply in this case. This is a case in which both parties agree that this is a workplace claim against Gunter's employer. It is not a case in which both parties are content to try the case in circuit court. All such cases must first go to the Division for adjudication. For this reason, no matter how one interprets the 2005 amendments, as either the majority or as Judge Welsh's dissent does, this case must first go to the Division. The preliminary writ should be made permanent.